*United States v. Nelson P. Replogle* – 3:21-mj-1061
**Part II— Supplemental Statement of the Reasons for Detention**

In consideration of releasing Defendant pending trial, the Court has weighed the factors set forth in 18 U.S.C. § 3142(g) and finds that the arguments presented at the detention hearing, as well as the Pretrial Services Report ("PSR") and Addendum to the PSR compiled by the United States Probation Office, establishes by clear and convincing evidence that Defendant is a danger to the community for the reasons set forth below.[1]

First, the Court considers the nature and circumstances of the charged offense. 18 U.S.C. § 3142(g)(1). Defendant is charged in the Complaint [Doc. 1] with murder for hire, in violation of 18 U.S.C. § 1958. The Court notes that this charge does not carry a presumption of detention that Defendant would have to rebut. Additionally, during the detention hearing, Defendant asserted that the instant charge is not a crime of violence, citing to *United States v. Cordero*, 973 F.3d 605 (6th Cir. 2020). In *Cordero*, the Sixth Circuit found that murder for hire is not a crime of violence, within the meaning of the force clause definition of crime of violence, under the career offender provision of the Sentencing Guidelines. *Id.* at 625. Specifically, the Sixth Circuit noted that "[t]o be considered a 'crime of violence,' [the defendant's] murder-for-hire conviction must have 'as an element the use, attempted use, or threatened use of physical force against the person of another.'" *Id.* (quoting U.S.S.G. § 4B1.2(a)(1)). The Government in *Cordero* "acknowledge[d] that a violation of § 1958 is not a 'crime of violence' as used in the Sentencing Guidelines," and the Sixth Circuit noted it is "apparent under the categorical approach that a violation of § 1958 can occur without the 'use, attempted use, or threatened use of physical force' against another person." *Id.* at 625–26; *see also United States v. Ransbottom*, 914 F.2d 743, 746 (6th Cir. 1990) (where the defendant violated § 1958 by travelling from Tennessee to Kentucky with the intent to discover the location of the victim).

Here, the Court notes the existence of several cases within the Sixth Circuit (albeit decided before *Cordero*) finding that a charge of murder for hire under 18 U.S.C. § 1958 constituted a crime of violence under the Bail Reform Act. *See, e.g.*, *United States v. Sadiqullah*, No. CR 5:19-101-KKC, 2019 WL 3945651, at *1 (E.D. Ky. Aug. 21, 2019); *United States v. Shalash*, No. CR 5:19-101-KKC, 2019 WL 2498936, at *2 (E.D. Ky. June 17, 2019); *United States v. Scott*, No. 06-20185, 2012 WL 1068104, at *2 (E.D. Mich. Mar. 29, 2012) (involving conspiracy to use interstate facilities in the commission of a murder for hire, in violation of 18 U.S.C. § 1958). Under the Bail Reform Act, a crime of violence is defined as "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another"— identical to the definition under the Sentencing Guidelines. 18 U.S.C. § 3156(a)(4)(A). However, the Bail Reform Act also defines a crime of violence as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(B); *see, e.g.*,

---

[1] The Court initially appointed Assistant Federal Defender Ben Sharp and the Federal Defender Services of Eastern Tennessee ("FDSET") to represent Defendant. [Doc. 5]. Following the detention hearing, Attorney Joseph Fanduzz was retained and substituted as counsel of record.

*Sadiqullah*, 2019 WL 3945651 at *1. This language is not present in the definition of a crime of violence discussed in section 4B1.2 of the Sentencing Guidelines or in *Cordero*. Therefore, the Court finds that the instant charge constitutes a crime of violence under the Bail Reform Act.

However, even if the murder for hire charge was not defined as a crime of violence under the Bail Reform Act, the nature and circumstances of the charged offense still weighs in favor of detention. During the detention hearing, the Government proffered that the FBI received information that an individual had utilized an online website to facilitate a murder for hire with payment through Bitcoin.[2] Specifically, it is alleged that $17,800 in bitcoin was provided as payment, and that the date and time of the murder for hire, as well as the victim's vehicle make, model, and color were disclosed. The Government proffered that a blockchain analysis was performed, the Bitcoin payment was traced to a CoinBase wallet, and a subpoena for records was obtained which demonstrated that Defendant was listed as the owner of the account involved in the transaction with the individual responsible for the murder for hire website. Further, the Government proffered that the investigation revealed that the IP address involved with the CoinBase wallet was associated with Defendant's AT&T account at his home. Lastly, the Government proffered that additional investigation revealed that Defendant utilized his First Horizon savings account to purchase the bitcoin.

Second, the weight of the evidence of Defendant's dangerousness weighs in favor of detention largely for the reasons detailed above. 18 U.S.C. § 3142(g)(2). In *United States v. Stone*, the Sixth Circuit clarified that the weight of the evidence against the defendant "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." 608 F.3d 939, 948 (6th Cir. 2010). Defendant is alleged to have procured the murder for hire of his wife and used surreptitious means and sophisticated technology to do so. While the use of cryptocurrency does not on its own implicate a risk of danger, Defendant's alleged use of Bitcoin in connection with locating an individual on the Internet to commit a murder for hire suggests that he was attempting to avoid detection. In addition, as noted in more detail below, the evidence of Defendant's dangerousness is demonstrated by the allegations that in arranging the murder for hire, he took affirmative steps to provide specific information regarding his wife's proposed location in furtherance of the plot to kill her.

Next, the Court must consider a host of factors in regard to the history and characteristics of the Defendant, which factors the Court finds neither weigh for or against release. 18 U.S.C. § 3142(g)(3)(A). Defendant previously lived in Michigan until 2018, and at the time of his arrest, lived with his wife and daughter in Knoxville. However, other than his wife and daughter,

---

[2] Bitcoin is "an anonymous, decentralized form of electronic currency that exists entirely on the Internet and not in any physical form." *United States v. Murgio*, 209 F. Supp. 3d 698, 704 (S.D.N.Y. 2016) (citing Kevin V. Tu & Michael W. Meredith, *Rethinking Virtual Currency Regulation in the Bitcoin Age*, 90 Wash L. Rev. 271, 277 (2015)); *see, e.g.*, *United States v. Reuer*, No. CR. 19-50022-JLV, 2019 WL 1012187, at *2 (D.S.D. Mar. 4, 2019). As noted by the Government, the accepted practice is to use "Bitcoin" to label the protocol, software, and community, and "bitcoin" to label units of currency. [Doc. 1].

Defendant does not possess any significant ties to this District. Defendant is retired and at the time of his arrest, worked part-time while also earning a pension. Defendant does not have any criminal history. During the detention hearing, Assistant Federal Defender Sharp and the Government both discussed the potential necessity of a mental health evaluation.

At the detention hearing, previous defense counsel requested to submit an updated residential plan, as no concrete arrangements existed at the time of the hearing. Attorney Fanduzz then reviewed several proposed options with the United States Probation Office. The United States Probation Office completed an Addendum to the PSR which provides that Defendant's family has reserved a room for him at the Mainstay Suites, located at 144 Merchants Drive in Knoxville, Tennessee from May 4 through 11, 2021; that Defendant's family has reserved a residence through Airbnb at 1610 McCroskey Avenue in Knoxville, Tennessee from May 11 to the end of August 2021; and that Defendant's brother, James Replogle, stated that either he or his father, Ferel Replogle, plan to stay with Defendant if he is released on conditions in the Eastern District of Tennessee. Additionally, Attorney Fanduzz proposed that if permitted, Defendant could also reside with his brother (James Replogle) and sister-in-law at their residence in Manistique, Michigan.

While Defendant has now proposed several living arrangements to mitigate his risk of danger, the Court shares the concerns of the United States Probation Office about the temporary nature of the proposed residences in this District. The United States Probation Office, as well as the Court, did not receive any significant level of information about any of the proposed residences. Moreover, although Defendant stated at the hearing that he would submit to any conditions imposed by the Court, including a condition prohibiting Internet access, Defendant has not detailed the potential measures in place at any proposed residence to limit access to the Internet or electronic devices. Although the Court acknowledges the proposed family support, the Court is unable to assess the suitability any proposed residence or living arrangement.[3]

Finally, under the pertinent part of 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." First, the Court notes the danger to Defendant's wife posed by any release, as Defendant is alleged to have procured a murder for hire of his wife as she would be driving to the veterinarian's office to take her pet for an appointment. Defendant is alleged to have utilized a virtual currency through Bitcoin to arrange the murder for hire and the Government proffered at the hearing that he was found shredding documents prior to his arrest. Defendant's release could pose a very real threat to the safety of his wife. The United States Probation Office has recommended that Defendant be detained largely due to the nature of the instant offense and safety concerns for the community. Significantly, the recommendation of the United States Probation Office did not change following the proposed residential plans, and the conditions proposed by Defendant such as electronic monitoring or home detention will not mitigate the risks Defendant poses to the community, particularly his wife.

---

[3] No third-party custodian was proposed at the hearing.

Consequently, the Court finds that the evidence and information provided at the hearing established by clear and convincing evidence that Defendant poses a serious risk of danger to the community or another person. The Court finds that no condition or combination of conditions will reasonably assure the safety of individuals of the community if Defendant were released on bond. Therefore, Defendant shall be detained pending trial.